AO 106 (Rev. 04/010) Application for Search Warrant     AUTHORIZED AND APPROVED/DATE: _____ 2/5/24

# UNITED STATES DISTRICT COURT
### for the
WESTERN          DISTRICT OF          OKLAHOMA

**FILED**

FEB – 5 2024

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
BY_____ , DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| Black Cell Phone | )    Case No:   MJ-23-83-STE |
| located at: | ) |
| 3625 NW 56th Street, | ) |
| Oklahoma City, OK 73112 | ) |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is(*check one or more*):

☒    evidence of the crime;
☒    contraband, fruits of crime, or other items illegally possessed;
☒    property designed for use, intended for use, or used in committing a crime;
☐    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached Affidavit of Special Agent Elizabeth Hancock, Homeland Security Investigations, which is incorporated by reference herein.

☒    Continued on the attached sheet(s).
☐    Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

Elizabeth Hancock
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: __Feb. 5, 2024 at 11:07AM__

_____
*Judge's signature*

City and State:   Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Elizabeth Hancock, a Special Agent ("SA") with Homeland Security, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I have been employed as a SA with Homeland Security Investigations ("HSI") since August 2019, and am currently assigned to work human trafficking, child exploitation, and intellectual property rights cases in Oklahoma City, Oklahoma. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. In 2009, prior to becoming a Special Agent, I attended the Police Academy and received a Texas Commission on Law Enforcement ("TCOLE") law enforcement certificate as a Patrol Officer for the Nacogdoches Police Department in Nacogdoches, Texas. In 2014, I became a Detective at the Angelina County Sheriff's Office in Lufkin, Texas. As a Detective, I predominantly investigated "Crimes Against People," specifically exploitation of children. In securing said commission, I received formal law enforcement training, to include over twenty-three weeks at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, as it pertains to investigating and enforcing violations of Federal law, including violations of Federal customs and smuggling statutes, as well as child exploitation crimes.

2.      This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the items specifically described in Attachment A of this Affidavit (hereinafter referred to as "TARGET DEVICES") which are located at 3625 NW 56th Street, Oklahoma City, Oklahoma 73112 for evidence that constitutes: evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed and intended for use, and which has been used as a means of committing criminal offenses, namely, the violation of 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography. As set forth below, I have probable cause to believe that such property and items, as described in Attachment B, will contain evidence of the described offense.

3.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, written reports, and surveillance conducted. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that are necessary to establish probable cause that contraband and evidence, fruits, and instrumentalities of a violation of 18 U.S.C. § 2252A(a)(5)(B), possession of child pornography, which will be located in TARGET DEVICES.

## PROBABLE CAUSE

4.      On or about November 6, 2023, the Cache Police Department received a report from Mary OLDAKER ("Mary") regarding her estranged husband, Erick

OLDAKER ("OLDAKER"), being in possession of possible child exploitation images on various digital devices. Mary stated OLDAKER was observed to have viewed or been in possession of child exploitation, including as far back as 2009. According to the Cache Police Department Officer Statement, dated November 6, 2023, Mary stated she found a thumb drive belonging to her husband when she and OLDAKER lived in Germany in 2009. Mary described one of the videos found on the thumb drive as being a toddler performing oral sex on an adult penis. Mary stated there were two more videos on this thumb drive but was too emotional to describe the video contents.

5.      Mary stated her oldest son also made a report of sexual abuse when he was approximately 5 years old. This occurred when the family lived in Louisville, Kentucky, and Mary stated she reported the incident to the Louisville Metro Police Department. Mary stated she did not know what the disposition was regarding the case. Mary stated her son was removed from her custody during the investigation and she did not speak with her son until sometime around his 18th birthday.

6.      Cache Police Department personnel were given a gmail address Mary stated belonged solely to her husband. The gmail address was noted to be under the name Peter Pecker and the address was Peekerofpeter@gmail.com. Mary stated she did not have access to the account.

7.      Mary also provided the police department with an audio taping of a conversation between Mary and OLDAKER. According to the report, OLDAKER admitted that he was a pedophile and that, if Mary played the recording in court, Mary would "win".

8.      Mary stated she was provided an Emergency Protective Order against OLDAKER for herself and her two children, both juveniles.

9.      Detective Bearden stated the Comanche County Sheriff's Department began investigating the matter shortly after the report was made to the Cache Police Department. At that time, Mary brought multiple items to the Cache Police Department for analysis, which included the following items:

- Camouflage HP Computer;

- Black Cell Phone;

- Seagate hard drive bearing Serial Number 5VG7V09Y;

- Toshiba hard drive bearing Serial Number 2BF400JB7S10JR;

- Dell XFR laptop computer bearing Serial Number 4MY7XL1;

- Dell XFR laptop computer bearing Serial Number 66Y7XI1;

- HP Probook laptop computer bearing Serial Number 2TK7430NCY;

- General Dynamics laptop computer bearing Serial Number ZZSJC0076ZZ1020;

- Dell Optiplex 980 personal computer tower bearing Serial Number 00186-068-228-026;

- Dell Dimensions E510 personal computer tower bearing Serial Number GXWM9B1;

- LG personal computer tower bearing Serial Number 050029942; and

- Black Toshiba Tablet with cracked screen bearing Serial Number YB216009R.

10.     On December 18, 2023, at approximately 1015 hours, I arrived at the Comanche County Sheriff's Office and met with Detectives Bearden and Duran. I took

custody of multiple items brought to the Office by Mary on December 11, 2023. The items were reported to have possible child exploitation images or videos on them. The items seized by HSI are as follows:

- Cisco Systems Processor bearing serial number FTX1417AKR4;

- Anatel Processor bearing serial number 2290-10-1086;

- Cisco Systems Processor bearing serial number F0C18414AD1;

- Netgear Hard Drive Tower bearing serial number 23J30276001D9;

- Western Digital 2.0TB Hard Drive bearing serial number 3061-771698-802 08P;

- Western Digital 1.0TB Hard Drive bearing serial number 2061-701640 802 01PD2;

- Seagate Hard Drive bearing serial number 4LR27CFE;

- Seagate Disc Drive bearing serial number 5LY7FM2R;

- Seagate Disc Drive bearing serial number 5TH0N5DF;

- Western Digital Disc Drive bearing serial number WXH1E30EF503; and

- WinTV HVR Hybrid DVD Stick 850 bearing serial number 72301 LF Rev B3F0.

     11.    The items listed in paragraph 11 were transported back to the HSI RAC Oklahoma City Office for housing.

     12.    On December 19, 2023, I traveled to the Oklahoma State Bureau of Investigations ("OSBI") and retrieved the original list of devices, as detailed in paragraph 10. Those devices were transported back to the RAC Oklahoma City Office for housing.

13.    The devices listed in paragraphs 10 and 11 will further be referred to as the "TARGET DEVICES."

14.    On January 31, 2024, I traveled to the Comanche County Sheriff's Department and interviewed Mary. Investigator Bearden assisted with the interview. In summation, Mary stated she and OLDAKER married in 2004 after dating for approximately one year. At that time, Mary already had a male child from another relationship. In 2005, Mary stated OLDAKER was accused of sexual assault of her first son, at which point the child was removed from Mary's custody and placed with her parents.

15.    Mary and OLDAKER stayed together and had two more children together. Mary stated, from 2009 to 2022, she found different images and videos of what she defined as child pornography (children engaged in sexual activity or being sexually abused by adults). The images she found were on multiple devices, including all the laptop computers located in the home, desktop computers, hard drives, phones, and thumb drives. After 2009, Mary estimated that she found images and videos on different devices every three to four months until 2022, at which point Mary stated she stopped looking for the images and videos.

16.    The first time Mary stated she found images and videos of child pornography was in 2009 on a hard drive attached to OLDAKER'S computer at the time. Mary stated she saw three "clips" (videos). The first "clip" was titled something to the effect of, "Four-year-old gives blowjob". Mary didn't remember what the next video was titled, but remembered it depicted an infant on a bed lying on its stomach with a diaper

on. A grown man walks over to the bed and begins to sexually assault the infant. The third video involved adults and adolescent boys around a pool. In that video, Mary described there to be "sexual activities ensuing all around."

17.    The last time Mary observed something involving child exploitation images, videos, or stories depicting child sexual assault was in 2022. Mary stated this was on one of the laptops OLDAKER owned. Mary stated the telephone she turned over to law enforcement (a Samsung cellular telephone) belonged to her. She stated that cell phone would have images she took of OLDAKER'S computer when Mary found what she described as stories of child sexual abuse fantasies. Mary stated she took pictures of the stories as evidence prior to turning the telephone over to law enforcement. Mary could not specify which items she turned in would have child sexual abuse material found due to her having found numerous such depictions over the last 14 years or more. Mary was adamant that the laptops would have child abuse material present due to remembering seeing such depictions in 2022 on the devices. Mary stated, from 2009 to 2022, the images and videos she found were always similar to the ones she found in 2009 described above. Mary observed these images and videos, as well as the stories, on the laptops, hard drives and USB drives found in the home.

18.    In October of 2023, Mary also applied for an Emergency Protective Order against OLDAKER. That Protective Order detailed that OLDAKER could not have contact with Mary or the children. Mary stated she applied for the Protective Order because OLDAKER was a "pedophile" and she wanted to protect herself and her children

from him. After being served the Protective Order, Mary stated OLDAKER fled

Oklahoma and moved to the state of Virginia to live with his mother.

19.    The TARGET DEVICES Mary turned over to law enforcement were all

located by Mary at her residence, 106 South 5th Street in Cache, Oklahoma, in the

Western District of Oklahoma. According to Mary, aside from the phone, all remaining

TARGET DEVICES belonged to OLDAKER. Prior to OLDAKER leaving for Virginia,

he, along with Mary and their minor children, lived in the Cache residence. Prior to Mary

collecting the TARGET DEVICES, they were located in the house or in a shed located on

the property. Mary, OLDAKER, and the children had access to the locations in which the

devices were stored. Due to the amount of images Mary saw over the years and the

different devices on which she found those images, it is likely that images and videos of

child pornography will be found on more than one device, if not all devices, turned over

to law enforcement.

## DEFINITIONS

20.    The following definitions apply to this Affidavit and Attachments A and B:

a.    "Child erotica," as used herein, means materials or items that are

sexually arousing to persons having a sexual interest in minors but that are not

necessarily obscene or do not necessarily depict minors in sexually explicit poses

or positions.

b.    "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual

depiction, including any photograph, film, video, picture, or computer or computer-

generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c.       "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such devices: and includes smartphones, and mobile phones and devices." *See* 18 U.S.C. § 1030(e)(1).

d.       "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input-output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any

devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password, a string of alpha-numeric characters, usually operates what might be termed a digital key to "unlock" data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

f.      "Internet Protocol address," or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigned a user's computer a particular IP address that is used each time the computer accesses the Internet.

g.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access

to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

h.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i.      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j.      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

k.      A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks; RAM; "thumb," "jump", or "flash" drives; CD/DVDs; and other magnetic or optical media.

l.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversation into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether stored in a permanent format.

## CHARACTERISTICS COMMON TO CHILD PORNOGRAPHY COLLECTORS

21.    As a result of my consultations with other law enforcement officers, both federal and state, who have considerable experience investigating the sexual exploitation of children, and my own experience, I have learned about the individuals engaged in child exploitation activities and about the computer technology available to, and utilized by, those individuals. I have learned that individuals engaged in the production, procurement, trade, and/or transmission of child exploitation through the United States mail, computer, or other interstate conveyance commonly:

m.    Receive sexual gratification and satisfaction from actual physical contact with children and from fantasy that may be simulated by producing and viewing children engaged in sexual activity or in sexually suggestive poses.

n.    Own and operate photographic production and reproduction equipment. This equipment is often digital cameras which include both cameras which take still images and movie files.

o.    Collect sexually explicit or suggestive materials of adults and/or children consisting of photographs, magazines, motion pictures, videotapes, books, slides, computer images, drawings or other visual media for their own sexual arousal and gratification, and in some instances, to lower the inhibitions of children they are attempting to seduce, and/or to arouse and to demonstrate their desired sexual acts to their selected partners or victims.

p.      Often do not dispose of their collection of sexually explicit material. If the material is discarded or lost due to computer malfunction, these individuals often replenish their supply of child exploitation materials very quickly.

q.      Correspond with individuals who share their same interest in child exploitation materials, and maintain their names, addresses, telephone numbers, and other identifying information in lists, telephone books, address books, scraps of paper, or on computer disks.

r.      Obtain, collect, and maintain photographs of children they are or have been involved with, which may depict children fully clothed, in various states of undress, totally nude, or in various activities, which are often held for lengthy period.

s.      Collect books, magazines, newspapers, and other writings about sexual assaults of children to understand their own feelings toward children, to justify their feelings, and to find countenance for their illicit behaviors and desires.

t.      Commonly collect items which could be any material relating to children that serve a sexual purpose for a given individual. These items as used herein, have been termed "child erotica" and so defined by now retired Special Agent Ken Lanning, Federal Bureau of Investigation. *See* Kenneth Lanning, Child Molesters: A Behavioral Analysis (2001) at page 65. Some of the more common types of "child erotica" include photographs that are not sexually explicit, drawings, sketches, fantasy writings, diaries, and sexual aids. Federal courts have recognized the evidentiary value of child erotica and its admissibility in child exploitation cases.

*United States v. Riccardi*, 258 F.Supp.2d 1212 (D. Kan. 2003); *United States v. Caldwell*, 181 F.3d 104 (6th Cir. 1999) (unpublished) (child erotica admissible under Federal Rules of Evidence 404(b) to show knowledge or intent).

u.    Often do not discard the child exploitation material but collect it over a long period of time and maintain this material in the privacy of their homes. Sometimes, individuals using peer-to-peer software will engage in a routine where they may delete their child exploitation material after they have viewed it several times and then, after the deletion occurs, the individual will replenish their supply via their peer-to-peer connection when they desire more images to satisfy their sexual interest in children. This procurement and purging cycle results in evidence of their current child exploitation materials being easily located on their computer, as well as evidence of their deleted material remaining on their computer, which can be recovered by a forensic computer examiner.

v.    In my experience and that of other law enforcement agents with experience investigating child exploitation crimes, individuals who trade and share child exploitation material via the Internet retrieve and store the child exploitation materials (whether they produced it or obtained it from other sources) on an electronic storage device as previously stated. As also previously stated, individuals who trade and share child exploitation materials tend to retain their collection of child exploitation materials on digital media (such as hard drives, computers and/or cell phones), which can be stored for a very long amount of time, and tend to keep their collection nearby and secured, usually within their residence or on their person.

It is well-known that when individuals relocate from one residence to another, they take their valued possessions (such as vehicles, furniture, clothes, important documents, computers, electronic devices, etc.) with them and store them in their new residence.

22.     Based on the facts set forth above, I believe that OLDAKER engaged in the above-described illegal activities and that a search of the TARGET DEVICES will result in the discovery of devices containing child pornography and related evidence.

## COMPUTERS, THE INTERNET, AND CHILD EXPLOITATION

23.     I have had training and experience in the investigation of computer-related crimes. Based on my training, experience, and knowledge, I know the following:

w.     Computers and digital technology have dramatically changed the way in which individuals interested in child exploitation interact with each other. Computers basically serve four functions in connection with child exploitation: production, communication, distribution, and storage.

x.     Individuals involved in child exploitation can now transfer printed photographs into a computer-readable format with a device known as a scanner. Furthermore, with the advent of digital cameras and smartphones with cameras, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer. In the last ten years, the resolution of pictures taken by digital cameras and smartphones has increased dramatically, meaning that such pictures have become sharper and crisper. Photos taken on a digital camera or smartphone may be

stored on a removable memory card in the camera or smartphone. These memory cards often store up to 256 gigabytes of data, which provides enough space to store thousands of high-resolution photographs and videos. Video camcorders, which once recorded video onto tape or mini-CDs, now can save video footage in a digital format directly to a hard drive in the camera. The video files can be easily transferred from the camcorder to a computer.

y.    A device known as a modem allows any computer to connect to another computer using telephone, cable, or wireless connection. Electronic contact can be made to millions of computers around the world. The ability to produce child exploitation images/videos easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child exploitation images/videos. Child exploitation can be transferred via electronic mail or through file transfer protocols (FTPs) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "instant messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child exploitation materials.

z.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child exploitation materials. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. Given the storage capabilities,

modern computers can retain many years' worth of a user's data, stored indefinitely. Even deleted data can often be forensically recovered. In addition, there are numerous options available for the storage of computer or digital files. One-terabyte external and internal hard drives are not uncommon.

aa.    Other media storage devices include CDs, DVDs, and "thumb" "jump" or "flash" drives, which are very small devices which are plugged into a port on the computer. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices (CDs and DVDs are unique in that special software must be used to save or "burn" files onto them).

bb.    Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person or in their immediate vicinity. Digital files can be quickly and easily transferred back and forth between computers (as broadly defined in 18 U.S.C. § 1030(e)) and other digital file storage devices or stored simultaneously on them. For example, smartphones can often synch with a traditional desktop or laptop computer. This can result in files being transferred from the smartphone to the computer or even stored on both devices simultaneously.

cc.    The Internet affords individuals several different venues for obtaining, viewing, and trading child exploitation materials in a relatively secure and

anonymous fashion. For example, distributors of child exploitation materials can use membership-based/subscription-based Web sites to conduct business, allowing them to remain relatively anonymous.

dd.    Individuals also use online resources to retrieve and store child exploitation materials, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases here online storage is used, however, evidence of child exploitation can be found on the user's computer or external media in most cases.

ee.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (i.e., by saving an email as a file on the computer or saving the locations of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Accordingly, a computer forensic examiner can often find evidence of deleted files on a user's

computer. Thus, if a user has downloaded image files, viewed them, then deleted them, a computer forensic examiner could oftentimes find evidence of such actions and maybe even the deleted images themselves.

## STALENESS ANALYSIS

24.    Staleness tests whether facts presented in support of probable cause "relate to presently existing condition(s)." Similar to general probable cause analysis, stateliness is not amenable to technical, "birth line" rules. Nor is it intended "to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." Rather, stateliness is a flexible concept that turns, in significant part, upon the nature of the crime at issue. Courts have recognized that child sexual exploitation offenses are "-[non]-fleeting" crimes. *Frechette,* 583 F.3d at 378. The Courts have reasoned that "because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography."

25.    Other courts have described the inert nature of child exploitation crimes in terms of the "hoarding" and "collecting" often associated with these offenses. For example, in *Perrine,* a search warrant alleged that the defendant, who had a prior offense, transmitted several child exploitation videos using a Yahoo! chat room based upon facts that were nearly four months old at the time of warrant application. *Perrine,* 518 F.3d at 1100-1200. Concluding that the information set forth in the warrant application was not stale, the court stated that:

The observation that images of child pornography are likely to be hoarded

by persons interested in those materials in the privacy of their homes is

supported by common sense and the cases. Since the material are illegal to

distribute and possess, initial collection is difficult. Having succeeded in

obtaining images, collectors are unlikely to destroy them. Because of their

illegality and imprimatur of severe social stigma such images carry,

collectors will want to secret them in secure places, like a private residence.

This proposition is not novel in either state or federal court: pedophiles,

preferential child molesters, and child pornography collectors maintain

their material. *Id.* at 1206. *See also United States v. Lacy,* 118 F.3d 7421,

746 (9th Cir. 1997) (same); *United States f. Potts,* 586 F.3d 823, 830 (10th

Cir. 2009) (observing that individuals who possess child pornography "are

likely to hoard their material and maintain them for significant periods of

time").

26.    The "hoarder" rationale is similar in kind to the "collector" profile often

associated with persons who receive, distribute, and possess child exploitation material.

In *United States v. Pappas,* the Seventh Circuit recently observed that:

[T]he moniker 'collector' merely recognizes that experts in the field have

found that because child pornography is difficult to come by, those

receiving the material often keep the images for years. There is nothing

especially unique about individuals who are 'collectors' of child

pornography; rather, it is the *nature of child pornography*, i.e., its illegality and the difficulty procuring it, that causes recipients to become 'collectors.'

27.    Federal courts have consistently recognized that child pornography evidence is more like business records and firearm evidence that drug evidence because child pornography is more likely to be collected and preserved for longer periods of time and more likely to be recovered from the place subject to search. *Frechette,* 583 F.3d at 379. (stating that "[u]nlike cases involving narcotics that are bought, sold, or used, digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded"). "In short, images of child pornography can have an infinite life span."

## CONCLUSION

28.    Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits, and instrumentalities of these offenses, more fully described in Attachment B, are located at in the TARGET DEVICES described in Attachment A. I respectfully request that the Court issue a search warrant for the TARGET DEVICES described in Attachment A, authorizing the search of the items described in Attachment B.

29.    I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless

otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

Elizabeth Hancock
Special Agent
Homeland Security Investigations

Sword and subscribed before me this ___5th___ day of _Feb._ 2024.

JUDGE SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## DESCRIPTION OF LOCATIONS TO BE SEARCHED

The entire property listed as being seized by HSI that includes electronic/computer devices. The TARGET DEVICES are described as:

- Camouflage HP Computer;

- Black Cell Phone;

- Seagate hard drive bearing Serial Number 5VG7V09Y;

- Toshiba hard drive bearing Serial Number 2BF400JB7S10JR;

- Dell XFR laptop computer bearing Serial Number 4MY7XL1;

- Dell XFR laptop computer bearing Serial Number 66Y7XI1;

- HP Probook laptop computer bearing Serial Number 2TK7430NCY;

- General Dynamics laptop computer bearing Serial Number ZZSJC0076ZZ1020;

- Dell Optiplex 980 personal computer tower bearing Serial Number 00186-068-228-026;

- Dell Dimensions E510 personal computer tower bearing Serial Number GXWM9B1;

- LG personal computer tower bearing Serial Number 050029942;

- Black Toshiba Tablet with cracked screen bearing Serial Number YB216009R;

- Cisco Systems Processor bearing serial number FTX1417AKR4;

- Anatel Processor bearing serial number 2290-10-1086;

- Cisco Systems Processor bearing serial number F0C18414AD1;

- Netgear Hard Drive Tower bearing serial number 23J30276001D9;

- Western Digital 2.0TB Hard Drive bearing serial number 3061-771698-802 08P;

- Western Digital 1.0TB Hard Drive bearing serial number 2061-701640 802 01PD2;

- Seagate Hard Drive bearing serial number 4LR27CFE;

- Seagate Disc Drive bearing serial number 5LY7FM2R;

- Seagate Disc Drive bearing serial number 5TH0N5DF;

- Western Digital Disc Drive bearing serial number WXH1E30EF503; and

- WinTV HVR Hybrid DVD Stick 850 bearing serial number 72301 LF Rev B3F0.

## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, named a violation of Title 18, United States Code, Section 2252A(a)(5)(B):

1.    Visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or relating to the sexual exploitation of minors or a sexual interest in children.

2.    Stories, text-based files, motion pictures, films, videos, and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or relating to the sexual exploitation of minors or a sexual interest in children.

3.    Information, correspondence, records, documents, or other materials pertaining the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or pertaining to the sexual exploitation of minors or a sexual interest in children, that were transmitted or received using a computer, cellular device, personal digital assistant, or some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail, including, but not limited to:

      a.    Cellular telephones, smartphones, tablets, personal digital assistants, computers, computer systems, computer hardware, computer software, tapes, cassettes, cartridges, streaming tape, commercial software, commercial hardware,

computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, tape systems, and other computer related operation equipment;

      b.     Digital cameras, scanners, monitors, printers, external storage devices, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMŚ, DVD, Flash memory devices, and other storage mediums;

      c.     Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

      d.     Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256 or relating to the sexual exploitation of minors or a sexual interest in children];

e.    Any and all records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 or relating to the sexual exploitation of minors or a sexual interest in children;

f.    Any and all records, documents, or materials, including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, Section 2256; or relating to the sexual exploitation of minors or a sexual interest in children;

g.    Any and all records of Internet usage including usernames and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums, including CDs or DVDs;

h.    Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data; and

       i.       Files, records, programs, logs, electronic communications, scanning programs, financial records, hacking software, or router configuration software media.

    4.      Computers or storage media used to commit the violations described above.

    5.      For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

       a.       Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contact, "chat." instant messaging logs, photographs, and correspondences;

       b.       Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

       c.       Evidence of the lack of such malicious software;

       d.       Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation, and to the computer user;

e.      Evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

f.      Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.      Evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.      Evidence of the times the COMPUTER was used;

i.      Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.      Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.      Records of or information about Internet Protocol addresses used by the COMPUTER;

l.      Records of or information about the COMPUTER'S Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered in any Internet search engine, and records of user-typed web addresses;

m.      Contextual information necessary to understand the evidence described in this attachment; and

n.      Videos/digital images found during the search of the COMPUTER(S), including any of those items saved or taken by or on the COMPUTER(S) searched.

6.      Child pornography, as defined as 18 U.S.C. § 2256(8), and child erotica.

7.    Records, information, and items relating to violations of the statutes described above, including:

      a.    Records, information, and items relating to the use or ownership of the TARGET DEVICES.

      b.    Records and information relating to the identity or location of the persons suspected of violating the statutes described above.

      c.    Records and information relating to the sexual exploitation of children, including correspondence and communications between users on the Internet and social media.

      d.    Records and information relating or pertaining to the identity of the person or persons using seized evidence.

As used above, the terms "records" and "information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives,

micro-SD cards, macro-SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.